```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                   :
UNITED STATES OF AMERICA           :
                                   :   Crim. No. 14-633 (NLH)
     v.                            :
                                   :
ROBERT ARMSTRONG,                  :
                                   :   **OPINION**
                                   :
          Defendant.               :
_____:

**APPEARANCES**:

ROBERT S. ARMSTRONG
DANBURY FEDERAL CORRECTIONAL INSTITUTION
INMATE MAIL/PARCELS
33-1/2 PEMBROKE STATION
DANBURY, CT 06811

  *Pro Se*

DIANA V. CARRIG
OFFICE OF THE US ATTORNEY
US POST OFFICE BUILDING
401 MARKET STREET - 4TH FLOOR
CAMDEN, NJ 08101

JORDAN MILOWE ANGER
MEREDITH J. WILLIAMS
PETER W. GAETA
OFFICE OF THE U.S. ATTORNEY
970 BROAD STREET - 7TH FLOOR
NEWARK, NJ 07102

  *Counsel for the United States*

**Hillman**, **District Judge**

     Before the Court is Robert Armstrong's ("Defendant") Motion

for Reduction of Sentence under the First Step Act, 18 U.S.C. §

3582(c)(1)(A).  (ECF 108).[1]  For the reasons expressed below, Defendant's Motion will be denied.

**Background**

On January 28, 2020, Defendant pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341.  (See Crim No. 1:20-cr-00095-NLH, ECF 95).  In addition, he pleaded guilty to violation of the terms of his supervised release in connection with a 2015 conviction, also for mail fraud.  (ECF 66).

Thereafter, on May 8, 2020, this Court sentenced Defendant to a term of imprisonment of 41 months and a 3-year term of supervised release with restitution of $59,389.06 for the new mail fraud conviction and a consecutive 24-month term of imprisonment with restitution of $472,698.74 for the violation of his supervised  release.[2]  (ECF 99; Crim No. 1:20-cr-00095-NLH, ECF 95).  Defendant's release date is projected to be March 11, 2024.[3]

Defendant filed the instant pro se motion for compassionate release on January 10, 2022.  (ECF 108).  The Government filed a

---

[1] References to "ECF" without additional reference to the case number are references to Crim No. 1:14-cr-00633-NLH.

[2] The Court also sentenced defendant to an additional one-year term of supervised release in 14-cr-00633 to run concurrently with the 3-year term of supervised release imposed in 20-cr-00095.  (ECF 99).

[3] Federal Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited April 27, 2022).

2

letter in opposition on April 18, 2022.  (ECF 113).  The Court considers Defendant's motion against this factual backdrop.

**Legal Standard**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons (the "BOP") to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)).

"Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy

3

statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

**Discussion**

1. **Defendant has satisfied the exhaustion requirements**

   Defendant contends that he fully exhausted his administrative remedies by applying to the warden at FCI Danbury and that he never received a response. (ECF 108 at 2). That said, Defendant does not indicate whether 30 days have passed since his application to the warden or attach any documentation showing his application. See Sellers, 2020 WL 1972862 at *1. (noting that the defendant has the burden to show that he has exhausted his administrative remedies).

   In their opposition, the Government does not directly address administrative exhaustion, but seemingly accepts Defendant's representation in that the Government proceeds directly to an analysis of 18 U.S.C. § 3852(c)(1)(A). (ECF 113 at 9).

   Based on Defendant's representation and the lack of dispute by the Government, the Court will accept that Defendant has exhausted his administrative remedies for the purposes of analyzing this motion.

## 2. **Defendant fails to establish "extraordinary and compelling" reasons for his release**

Defendant argues that his medical conditions of anxiety, depression, hypertension, high cholesterol, stomach ulcers, bipolar disorder, and obesity warrant his release. (ECF 108 at 2). Defendant further argues that being housed at FCI Danbury exacerbates the risk of contracting COVID-19 because of crowding and staffing shortages. (Id. at 7-9). Defendant implicitly also points to his age, 51 at the time of the writing of this Opinion, as a factor that increases his risks of complications if he contracts COVID-19. (Id. at 11). Finally, and without any evidence, he argues that the "vaccines are not the solution[.]" (Id.)

The Government opposes Defendant's motion and contends that Defendant has not met his burden to show "extraordinary and compelling reasons" justifying his release. They argue that the BOP has implemented a detailed action plan to address the advent of COVID-19 and that FCI Danbury, in particular, has metrics showing that it is effectively mitigating the risks of the pandemic. (ECF 113 at 4-6, 13). In terms of vaccinations, they point to data that shows that the BOP is diligently and swiftly vaccinating its inmate population. (Id. at 4-6). They also note that Defendant is vaccinated and boosted. (Id. at 9-11). Further, the Government relies heavily on the fact that

5

Defendant has not explained how the medical conditions that Defendant has identified rise to the level of "extraordinary and compelling reasons" for release under § 3582(c)(1)(A). (Id.)

Defendant does not present "extraordinary and compelling" reasons for his release. The Court takes seriously Defendant's concerns about the effect of COVID-19 in the prison environment and analyzes whether he has shown "extraordinary and compelling reasons for his release" accordingly. That said, the Court holds that Defendant has not met that standard. First, the Court finds instructive, although not determinative,[4] the current guidance by the Sentencing Commission as incorporated by §

---

[4] While the Court looks to § 1B1.13 as directed to by the statute, it is not, standing alone, a determinative factor in light of a lack of quorum which has prevented the Sentencing Commission from updating § 1B1.13 in response to the First Step Act. That said, the Third Circuit has blessed a district court's consideration of § 1B1.13 when it comes to evaluating motions for compassionate release filed by prisoners. United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021), cert. denied, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) ("The court correctly recognized that although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons.") Even if the Court were to assume that a revised § 1B1.13 would expand the breadth of medical situations warranting release, the result here would not be different. As set forth in more detail in this Opinion, the Defendant fails to demonstrate that his personal circumstances and jail conditions in light of the pandemic alone, or in tandem, represent extraordinary and compelling reasons warranting a sentence reduction and that the applicable sentencing factors under § 3553(a) similarly support such a reduction.

3582(c). Defendant has not pointed to any medical conditions that militate toward release under § 3582(c)(1)(A).

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(A). The Court cannot say that Defendant's medical conditions fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances." Id.

It also cannot say that Defendant suffers from conditions that substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id. While the Centers for Disease Control and Prevention have identified hypertension, obesity, and depression as risk factors associated with COVID-19,[5] courts have held that the mere fact that a defendant has one or more of those conditions is not enough to warrant compassionate release. United States v. Brashear, 2021 WL 5239119, at *3 (D.N.J. Nov. 10, 2021)

---

[5] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 27, 2022).

("Despite the risk of COVID-19, multiple decisions in the Third Circuit, and multiple decisions in this District, have denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues."); United States v. King, 522 F. Supp. 3d 249, 253 (W.D. Ky. 2021) (noting that high cholesterol even in the presence of other medical conditions did not create an "extraordinary and compelling reason" justifying release where the defendant's medical conditions were being adequately managed); United States v. Underwood, No. CR 09-0202-02, 2021 WL 4268891, at *2 (W.D. La. Sept. 20, 2021) (holding that ulcers even with other conditions did not create an "extraordinary and compelling reason" justifying release); United States v. Leger, No. CR 15-00061-01, 2021 WL 4699525, at *2 (W.D. La. Oct. 7, 2021) (holding that depression and bipolar disorder were not "extraordinary and compelling reasons" justifying release).

Indeed, Defendant concedes that his conditions are being managed by medication at FCI Danbury. (ECF 108 at 2). In the absence of specific evidence showing a more heightened risk, the Court declines to find that Defendant has made a showing of medical conditions, even with the possibility of contracting COVID-19, which warrant his release.

Additionally, FCI Danbury's mitigation efforts at controlling the spread of the coronavirus appear to be

effective.  Currently, FCI Danbury has no active inmate or staff positive tests.[6]  Over the course of the pandemic, one inmate has died as a result of infection by COVID-19, and 331 inmates have recovered from positive infections.[7]  Id.

Defendant appears to be fully vaccinated.  (ECF 113 at 2). Further, according to the BOP, 907 inmates out of a population of 1,038 at FCI Danbury have been fully vaccinated.[8][9]  Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court believes that the vaccination rate inside FCI Danbury weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at FCI Danbury, does not present "extraordinary and compelling" reasons supporting his release. The effective management of his health conditions through medication and FCI Danbury's efforts at controlling the spread of COVID-19, taken together, undermine any finding that this

---

[6] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited April 27, 2022).

[7] Id.

[8] Id.

[9] FEDERAL BUREAU OF PRISONS, FCI DANBURY, https://www.bop.gov/locations/institutions/dan/ (last visited April 27, 2022).

Defendant presents "extraordinary and compelling reasons" for his release.

### 3. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

Defendant argues that his age, 51, indicates a low risk of recidivism (ECF 108 at 3).  He argues that he has been a model inmate but for one incident in 2020 and has put together a plan to find gainful employment after his release.  (Id. at 27).  Defendant states that he has refrained from all forms of gambling since his arrest and that he also plans to enter a treatment program for gambling addition when he is released.  (Id. at 28).  In addition, he implicitly suggests that the non-violent nature of his offense counsels in favor of compassionate release.  (Id. at 21).  This argument does not tilt a full balancing of the § 3553(a) factors in his favor.

The Government argues that the § 3553(a) factors weigh toward denying Defendant's motion.  They point out that Defendant's most recent mail fraud offense began right after Defendant's release to a halfway house after serving a sentence for the exact type of scheme for which he was convicted in 2015.  (ECF 113 at 14).  They further note the sophistication of the

scheme in which Defendant mailed out fraudulent invoices to medical providers and sometimes followed up with threatening letters if the providers did not pay the invoice.  (Id.)  Finally, they point to antisocial behavior by Defendant beginning in his youth and the fact that he was not deterred from committing the most recent offense by his 2015 conviction. (Id. at 15).

The Court agrees with the Government and sees no reason to disturb the sentence it previously imposed.  Specifically, Defendant's mail fraud schemes defrauded hundreds of people and often in a very vindictive way when Defendant sent threatening letters demanding payment to medical providers.  18 U.S.C. § 3553(a)(1).  Defendant's offenses were sophisticated in that he carefully prepared his mailings so that they appeared to be from legitimate companies, appeared to correlate with deliveries of medical supplies to the towns in which the medical providers were located, and were of lower dollar amounts to evade fraud detection systems.  Id. at § 3553(a)(2)(A).  Further, the Court finds that deterrence of these kinds of crimes, both specific and general, is paramount where Defendant has engaged in this type of mail fraud scheme multiple times and where such schemes offer offenders the opportunity for a large payout.  Id. at § 3553(a)(2)(B), § 3553(a)(2)(C).  At the time of Defendant's sentencing, the Court emphasized that it was imposing the

11

sentence "because he continues to represent a threat to the public and to attempt to further deter him from engaging in this conduct in the future by emphasizing through some measure of incremental punishment how serious this conduct is and how much it needs to change for his benefit, for his family's benefit, and for society's benefit." (ECF 104 at 52:22- 53:3).

In sum, the advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated or that there has been a material difference in the § 3553(a) factors that animated the original sentence.

## Conclusion

For the reasons set forth above, Defendant's Motion for Compassionate Release (ECF 108) will be denied.

An accompanying Order will issue.

Dated: April 27, 2022  
At Camden, New Jersey

s/   Noel L. Hillman  
NOEL L. HILLMAN, U.S.D.J.